Robert L. JOHNSON, Jr., Leroy Sloan, Willie R. Jackson, Ernest H. McManus, and Booker T. Alexander, Jr., Appellees,

and

William G. Coffey, Jr., Intervenor,

v.

RYDER TRUCK LINES, INC., a corporation, Appellant,

International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, an unincorporated labor organization; and Local 71, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, an unincorporated labor organization, Defendants.

No. 76–1293.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1978.

Decided May 2, 1978.

---

3. Indeed, the State of North Carolina notes in its brief that many of these plaintiffs have filed individual actions.

Peter Reed Corbin, Jacksonville, Fla. (J. P. Jones, Jones & Corbin, Jacksonville, Fla., E. Osborne Ayscue, Jr., Helms, Mulliss & Johnston, Charlotte, N.C., on brief), for appellant.

Roland P. Wilder, Jr., Washington, D. C. (Robert M. Baptiste, Washington, D. C., on brief), for International Union.

Francis M. Fletcher, Jr., Charlotte, N.C., on brief for Teamsters Local Union No. 71.

J. LeVonne Chambers, Charlotte, N.C. (Jonathan Wallas and Louis L. Lesesne, Jr., Chambers, Stein, Ferguson & Becton, Charlotte, N.C., Jack Greenberg, New York City, and Barry Goldstein, Brooklyn, N.Y., on brief), for appellees.

Before WINTER, BUTZNER, and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

After affirming the district court's grant of injunctive relief, retroactive seniority, and back pay in this class action brought under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*] and § 16 of the Civil Rights Act of 1870 [42 U.S.C. § 1981], we granted rehearing to consider the effect of *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).[1] The principal question to emerge on rehearing is whether some employees can obtain relief under § 1981 that is not available to them under Title VII. We hold that in this instance they cannot, and we modify our initial opinion and remand the case for further proceedings.

## I

Incumbent black employees who were discriminated against when hired before the effective date of Title VII in 1965 were subsequently prevented by the company's bargaining agreement from obtaining jobs as line drivers while maintaining their full company seniority. The district court's order provided relief to employees who suffered in this way from the present effects of pre-Act discrimination. Rehearing disclosed that the relevant provisions of the bargaining contract involved in this case and the one considered in *Teamsters* are virtually identical. Both contracts provided that employees could not carry their full company seniority for all purposes with them when they transferred to line driver positions.

 In *Teamsters* the Court considered the effects of § 703(h) of the 1964 Act [42 U.S.C. § 2000e–2(h)] on the contract's seniority system.[2] It said:

[W]e hold that an otherwise neutral, legitimate seniority system does not be-

come unlawful under Title VII simply because it may perpetuate pre-Act discrimination. Congress did not intend to make it illegal for employees with vested seniority rights to continue to exercise those rights, even at the expense of pre-Act discriminatees. 431 U.S. at 353–54, 97 S.Ct. at 1864.

Therefore, *Teamsters* invalidates our affirmance of the district court's conclusion that the company's seniority system violated Title VII.

The employees assert, however, that § 703(h) is expressly limited to Title VII and that it should not be construed as a restriction on § 1981. They therefore insist that the seniority system violates their rights secured by § 1981 and that they are entitled to relief under that statute. It is this issue that we now address.

## II

 Title 42 U.S.C. § 1981, provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Civil Rights Act of 1964 did not repeal by implication any part of § 1981. This is firmly established by both the legislative history of the 1964 Act and its 1972 amendments. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 457–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); cf. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 416 n.20, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Section

---

1. Our initial decision is reported as *Johnson v. Ryder Truck Lines, Inc.*, 555 F.2d 1181 (4th Cir. 1977).

2. Section 703(h) of the 1964 Act [42 U.S.C. § 2000e–2(h)] provides in part:

 Notwithstanding any other provision of this subchapter, it shall not be unlawful em-

ployment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, . . . provided that such differences are not the result of an intention to discriminate because of race . . . . .

1981 affords a federal remedy against racial discrimination in private employment that is "separate, distinct, and independent" from the remedies available under Title VII of the 1964 Act. *Johnson v. Railway Express Agency, Inc., supra,* 421 U.S. at 461, 95 S.Ct. 1716. Thus an employee "who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." 421 U.S. at 460, 95 S.Ct. at 1770.

■ This case therefore presents the question of whether the incumbent employees who were discriminatorily hired before 1965 when Title VII became effective have a cause of action under § 1981 because the bargaining contract's restriction of carry-over seniority perpetuates the pre-1965 hiring discrimination.[3] Of course, each pre-1965 incumbent black employee had a cause of action under § 1981 because of the company's discriminatory hiring practices. But all parties recognize that this cause of action is barred by North Carolina's three year statute of limitations, N.C. Gen.Stat. § 1–52(1), which is made applicable to the § 1981 claim. *Johnson v. Railway Express Agency, Inc., supra,* 421 U.S. at 462, 95 S.Ct. 1716.

■■ The seniority provision of the bargaining contract was facially neutral, applying to both white and black employees if they transferred to the higher paying position of a line driver. Both black and white employees were subject to loss of their former departmental seniority and had to start at the bottom of the seniority list for line drivers even though they may have had more employment seniority than line drivers higher on the ladder. Consequently, § 1981 does not afford the black employees

relief, because this statute confers on black persons only the same rights possessed by white persons.

■ Moreover, the application of 42 U.S.C. § 1988 does not lead to a different conclusion. Section 1988 directs federal courts to enforce § 1981 "in conformity with the laws of the United States, so far as such laws are suitable . . ."[4] Section 1988 in itself does not create any cause of action, but it "instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts." *Moor v. County of Alameda,* 411 U.S. 693, 703–06, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973); *Scott v. Vandiver,* 476 F.2d 238, 242 (4th Cir. 1973).

In *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), the Court held: "Under the [1964] Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." This concept is essential to the employees' suit. However, in *Teamsters v. United States, supra,* 431 U.S. at 349, 97 S.Ct. 1843, the Court held that the *Griggs* rationale is not applicable to a seniority system that is lawful under § 703(h). Ordinarily, § 1988 enables a district court to utilize *Griggs'* interpretation of Title VII in a § 1981 employment discrimination suit, but the court cannot transgress the limitation placed on the *Griggs* rationale in *Teamsters* with respect to § 703(h). A ruling that a seniority system which is lawful under Title VII is nevertheless unlawful under § 1981 would disregard the precepts of § 1988. An analogous situation concerning the application of

---

3. Applicants refused jobs after 1965 on account of their race are entitled to an award of seniority retroactive to the date of application. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 762–70, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Theoretically, the same measure of retroactive seniority would be available to pre-1965 incumbents who sought linehaul jobs, but it would be of less value to them because they could not carry over their full employment seniority to their new job assignment.

4. Title 42 U.S.C. § 1988 provides in part:
 The jurisdiction in civil . . . matters conferred on the district courts by the provisions of this chapter . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect . . . .

§ 1988 is presented by *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), dealing with the enforcement of a § 1983 claim by utilization of a state law which made municipalities vicariously liable for the acts of their employees.[5] The Court held that such a state law could not be utilized to enforce the rights secured by § 1983 because it was inconsistent with federal law that excludes municipal corporations from liability under § 1983. 411 U.S. at 706, 93 S.Ct. 1785.

Our conclusion accords with decisions that have held, although in different context, that § 1981 does not invalidate bona fide seniority provisions. *See, e. g., Chance v. Board of Examiners,* 534 F.2d 993, 998 (2d Cir. 1976); *Watkins v. United Steel Workers Local 2369,* 516 F.2d 41, 49–50 (5th Cir. 1975); *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1320 n.4 (7th Cir. 1974); *cf. Patterson v. American Tobacco Co.,* 535 F.2d 257, 270 (4th Cir. 1976). It is also consistent with the Supreme Court's opinion in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *Johnson* emphasized that a party proceeding under § 1981 is not restricted by the administrative and procedural requirements of Title VII, but nothing in *Johnson* suggests that a practice lawful under Title VII can be held unlawful under § 1981. On the contrary, *Johnson* recognizes that Congress noted that Title VII and § 1981 are "co-extensive" and that they "augment each other and are not mutually exclusive." 421 U.S. at 459, 95 S.Ct. at 1719. *Johnson* gives no indication, however, that Congress intended to create conflicting and contradictory standards for determining what constitutes illegal discrimination.

■ We therefore withdraw our mandate and direct that a new judgment issue consistent with this opinion. We remand the case to the district court for reconsideration of the claims made by those employees who were afforded relief on the basis of the seniority system that *Teamsters* later held to be lawful. The parties suggest that additional evidence may be necessary, and the district court should reopen the proceedings for this purpose. Although the union did not appeal from the entry of the injunction against it, we direct the district court to permit it to move for relief from this order. Fed.R.Civ.P. 60(b)(6). The union's conduct in agreeing to the seniority system violated neither Title VII nor § 1981. Therefore, the judgment against it should be vacated. *See, Teamsters v. United States, supra,* 431 U.S. at 356, 97 S.Ct. 1843. In all other respects we affirm the district court for the reasons stated in our initial opinion.

WINTER, Circuit Judge, concurring specially:

I concur in the judgment of the court and in parts of its opinion; but since my concurrence rests in part on grounds different from those assigned by the majority, I append this statement of my separate views.

I have no doubt that *Teamsters* invalidates our affirmance of the district court's conclusion that the company's seniority system violated Title VII, and that we must vacate this portion of our judgment and remand, giving to affected employees the right to present additional evidence and giving to the union the right to have the judgment against it vacated. Where my reasoning differs from that of the majority is with respect to plaintiff's alleged cause of action under § 1981.

I readily agree that under § 1981, standing alone, the plaintiffs' only cause of action was their initial discriminatory employment. Unlike Title VII (42 U.S.C. § 2000e–2(a)(1)), which proscribes discriminatory hiring or firing of an employee *and* other discrimination with respect to "compensation, terms, conditions, or privileges of employment,"[1] § 1981 merely guarantees the

---

5. Section 1988 also authorizes resort to state laws for enforcement of the civil rights acts if they are not "inconsistent with the Constitution and laws of the United States."

1. Section 2000e–2(a)(2) also proscribes the limitation, segregation or classification of employees or applicants for employment in any way which would deprive or tend to deprive them of

black employee the same right to contract for his services "as is enjoyed by white citizens." The right guaranteed by § 1981 was denied when black employees were denied the right to be hired in certain classifications of jobs because of their race. But having obtained initial employment in classifications in which they were acceptable, I find no subsequent violation of § 1981 by reason of the seniority provisions of the bargaining contract. After initial employment, the right of blacks to contract was not abridged by reason of their race.

As the majority describes, the seniority provision of the bargaining contract was facially neutral, applying to both white and black employees if they transferred to the higher paying position of line driver. Both black and white employees were subject to loss of their former departmental seniority and in the event of a transfer they would be required to start at the bottom of the seniority list for line drivers even though they may have had more employment seniority than line drivers higher on the ladder. The conclusion that the operation of the seniority provision of the bargaining contract to freeze blacks in the less desirable jobs for which they had been hired did not violate § 1981 is supported by *Watkins v. United Steelworkers Local 2369,* 516 F.2d 41, 49–50 (5 Cir. 1975).[2] Although *Afro-American Patrolmen's League v. Duck,* 503 F.2d 294 (6 Cir. 1974), and *Macklin v. Spector Freight Systems,* 156 U.S.App.D.C. 69, 478 F.2d 979 (1973), reach a different result, I am more persuaded by *Watkins.*

If I am correct that the plaintiffs' sole claim under § 1981 was their original discriminatory employment, that claim was barred by North Carolina's three-year statute of limitations, as defendants pleaded in their answers to plaintiffs' amended complaint. *See* North Carolina Gen.Stat. § 1–52(1).

Unlike the majority, I think that § 1988 has nothing to do with this case. The thesis of the majority is that § 1988 imports into § 1981 both Title VII and the judicial gloss which has been placed upon it. The majority says that by virtue of § 1988 the discriminatory practices and procedures of the company, including a facially neutral seniority system which perpetuates past discriminations, held to be a violation of Title VII in *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), are now also outlawed by § 1981. Stated more simply, § 1981, despite the limited scope of its language, now outlaws that which was proscribed under Title VII. But, the majority reasons, the limitation on *Griggs* articulated in *Teamsters,* as a result of § 703(h) of Title VII, is also imported into § 1981 with the result that plaintiffs are not entitled to relief under § 1981. With this reasoning, I disagree.

Section 1988 speaks of the "exercise" of the jurisdiction of the federal courts in civil and criminal matters conferred on them by the Civil Rights Acts and the "enforcement" of those statutes. It requires that both the exercise of jurisdiction and the enforcement of the substantive law be in conformity with the laws of the United States "where such laws are suitable to carry the same into effect." But in all cases in which federal laws "are not adapt-

employment opportunities or adversely affect their status as employees because of their race.

**2.** *Chance v. Board of Examiners,* 534 F.2d 993, 998 (2 Cir.), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977), and *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1320 n.4 (7 Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), reach the same result, *Chance* by the theory that § 703(h) was an implied repeal of § 1981. *Waters* is more difficult to fathom because the court did not discuss the issue other than to remark that "[h]aving passed scrutiny under the substantive requirements of Title VII, the employment seniority system [utilized by Wisconsin Steel] is not violative of 42 U.S.C. § 1981." I disagree with the rationale of *Chance* and also with that of *Waters* if *Waters'* rationale is that of implied repeal. If the majority's citation of these cases is intended to constitute implied approval of their theory of implied repeal, I disassociate myself from this view. Because *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 457–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), made plain that § 1981 and Title VII were intended to be supplementary and not mutually exclusive, I think that neither can be an implied repeal of the other.

ed to the object, or are deficient in the provisions necessary to furnish suitable *remedies* [emphasis added], the common law, as modified and changed by the constitution and statutes of the State wherein the court . . . is held . . . shall" be applied "so far as the same is not inconsistent with the Constitution and laws of the United States."

I would stress that "exercise" of jurisdiction and "enforcement" refer to the *remedies* available and not to the threshold determination of whether a provision of the Act has been violated. Of course, I do not doubt that § 1988 imports into § 1981 many provisions of federal and state law to cover situations in which § 1981 is silent. A good example is the North Carolina statute of limitations which I think bars plaintiffs' recovery under § 1981 in the instant case. Incorporation of a state statute of limitations relates to remedy and not to the right to be enforced. In short, the provisions of state and federal law which are imported into § 1981 do not relate to the substantive proscriptions of § 1981; they relate solely to how remedies for acts illegal under § 1981, standing alone, are to be redressed.

Support for my view is found in both *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). In *Sullivan* where the pertinent issue was the measure of damages to be applied for a violation of § 1982, the Court relied on § 1988 to authorize resort to the state rule which appeared best to serve the policies expressed in the federal statutes. What impresses me is the clear implication in both the majority and dissenting opinions that the sole effect of § 1988 is to provide a *remedy* for violation of the Civil Rights Acts.

*Moor* is even more specific on the point. There the question was whether state law could be invoked under § 1988 to render a municipality liable for its violation of § 1983, notwithstanding that, under federal law, a municipality had been held not to be a "person" amenable to suit under § 1983. The Court held that it could not, but significantly it rested its view not primarily or solely on the language of § 1988 which made inapplicable "inconsistent" state rules, but on the ground that § 1988 "was [not] meant to authorize the wholesale importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights." (Footnote omitted.) 411 U.S. at 703–04, 93 S.Ct. at 1793.

I recognize that *Moor* was concerned with the application of state law to expand the scope of one of the Civil Rights Acts, while in the instant case we are concerned with the use of federal law to give an expanded meaning to § 1981. But I see no ground for distinction in determining the purpose and effect of § 1988, and I therefore read *Moor* to hold that § 1988 does not incorporate into and expand § 1981 by the provisions of Title VII, with or without their judicial gloss.

In summary, my reason for denying plaintiffs' recovery under § 1981 is that the only causes of action which plaintiffs have under § 1981 are time-barred.