James DAWSON et al.,
Plaintiffs-Cross-Appellants,

v.

Robert B. PASTRICK et al.,
Defendants-Appellees,

and

East Chicago Firefighters Association, Local 365, Intervenor-Appellant.

Nos. 78–1139, 78–1140.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1978.

Decided May 31, 1979.

Hilbert L. Bradley, Gary, Ind., for intervenor-appellant.

Anthony DeBonis, Jr., East Chicago, Ind., Donald J. Evans, Project Justice & Equali-

ty, Valparaiso, Univ. School of Law, Valparaiso, Ind., for plaintiffs-cross-appellants.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This racial discrimination case challenging the employment practices of the East Chicago, Indiana Fire Department comes to this court after nearly seven years in the district court. The case proceeded on the basis of the plaintiffs' third amended complaint filed on May 23, 1973. The nineteen named plaintiffs brought the action on behalf of themselves and all other Black and Spanish surnamed persons similarly situated against East Chicago and others claiming that the past hiring practices of the fire department had discriminated against minorities and that the provisions of an Indiana Act, Ind.Code § 19–1–37.5, reinforced and continued the discrimination by "locking in" the effects of the department's past practices. The plaintiffs claimed that the conduct of the defendants violated the Thirteenth and Fourteenth Amendments and 42 U.S.C. § 1981, 1983, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1] They sought a judgment declaring the department's employment practices discriminatory and invalidating either the entire Indiana Act or section 10 of the Act.[2] The plaintiffs further urged the court to impose hiring quotas on the fire department and to prohibit consideration of seniority as a factor in promotion decisions.

In December, 1974, a partial consent decree concerning the department's hiring practices was presented to the court.[3] Although originally the court signed the settlement agreement, it later withdrew its approval when it became aware of objections to the relief provided. In June, 1975, a consent decree on promotions was presented to the court.[4] Objections to this proposed settlement also arose, because it declared the Indiana Act in question unconstitutional. The court requested briefing by all the parties on the proposed consent decrees, particularly as they related to the

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The plaintiffs added their Title VII claim after the Equal Employment Opportunity Act of 1972 extended the coverage of Title VII to units of government.

2. Ind.Code § 19–1–37.5–10 provides in pertinent part:

    Sec. 10. All promotions shall be made pursuant to written and oral examinations and based upon seniority. Seniority shall count for sixty per cent [60%] of the eligibility for promotion, one fourth [¼] of a point shall be given for each month of service including probationary period up to a maximum of sixty [60%] points, the written examination for thirty percent [30%] and the oral examination for ten percent [10%]; Provided, however, That no candidate for promotion shall be considered who fails to achieve a passing score, as defined by the commission or examining officer, on the written examination.

    (a) All promotions to any rank shall be from the next immediate lower rank and provided that the person to be promoted shall have qualified in time of service as designated by the commission . . . . .

3. The proposed partial consent decree declared that Ind.Code § 19–1–37.5–9 (the hiring system) was unconstitutional. The proposed relief would have established separate eligibility lists for Black, Spanish surnamed, and white applicants and imposed a 2–2–1 hiring formula for the first 45 positions available and a 1–1–1 formula for the next 55 before combining the separate lists.

4. This consent decree would have declared sections 10 and 4(i) of Ind.Code 19–1–37.5 (the promotional system) unconstitutional, established separate eligibility lists for each job classification, and imposed a 2–2–1 promotional formula until sixty percent of the positions in each job classification were filled by minorities. Until the sixty percent figure was reached, seniority and oral interviews were to be disregarded. After attainment of the sixty percent level, promotions were to be based sixty percent on a validated test score, thirty percent on seniority, and ten percent on oral examination. The consent decree also would have eliminated the requirement of the Indiana Act that promotion only be from the next immediate lower rank.

constitutionality of the Indiana Statute. In May, 1976, the court ruled that the Act was constitutional and ordered the parties to fashion any future settlement agreements accordingly.[5]

Approximately one year later, on May 31, 1977, a consent decree granting promotion relief was presented to the district court for approval. This new settlement proposed granting additional seniority points to minority firemen for promotion purposes. At the hearing held on the settlement, the court questioned all the parties. The attorney for the intervenor-union was unwilling to sign the agreement because "there may be some inverse discrimination," but added that "whatever the court orders, naturally [we will] be bound thereby." Nothing further was said by the intervenors, the defendants, or the plaintiffs on this subject. The court then indicated that "I am going to approve the partial judgment on the basis of the record that is before me as of this time."

On the same day, the issues that remained unresolved by agreement between the parties were tried before the court. The plaintiffs presented evidence, concluded, and rested; the defendants presented no evidence. Following receipt of additional memoranda, the court heard oral arguments of the parties on August 12, 1977. On November 15, the court entered its memorandum order. *Dawson v. Pastrick,* 441 F.Supp. 133 (N.D.Ind.1977).

The court held that the plaintiffs had stated a cause of action under the Thirteenth and Fourteenth Amendments and 42 U.S.C. § 1981, but not under 42 U.S.C. § 1983 or Title VII.[6] Reaching the merits of the constitutional claims, the court found that the plaintiffs failed to establish the intentional or purposeful discrimination required by *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and thus were not entitled to relief on those grounds. The court did hold, however, that the plaintiffs had established a *prima facie* case under section 1981 by presenting statistical evidence showing "a racial disparity between the racial composition of the fire department of East Chicago and the racial composition of the city itself." 441 F.Supp. at 141. Although the plaintiffs' *prima facie* case stood unrebutted, the court declined to impose the mandatory hiring quotas requested by the plaintiffs. Instead, it ordered the city to conduct affirmative recruitment of minorities, to have all application and examination procedures validated in accordance with EEOC guidelines, and to file a report every six months with the court—actions which the defendants had, for the most part, agreed to take prior to

---

5. As to the section of the Indiana Act regulating hiring, the district noted that it

 simply requires the Civil Service Commission to certify for appointment to the Fire Department the person having the highest rating on the eligibility list for the job class to which the appointment is to be made. The criteria for determining ratings are not prescribed in the statute. If in the past the Commission's rating system has illegally discriminated against minority applicants, then this Court could alter the rating system. The rating system could be altered in such a way to eliminate the effects of present and past discriminatory hiring.

 The trial court also held that the provisions of the Act governing promotions were not by themselves unconstitutional. The court was unwilling to mandate the complete abandonment of seniority as a factor in promotion decisions and noted that, to the extent the seniority system did "lock in" the effects of past discrimination, a less drastic remedy would be the

grant of additional seniority status to those workers who had suffered from the discrimination. The court concluded:

 This Court can obtain the objectives agreed to by the parties in their proposed Consent Decree without enjoining the application of three Indiana Statutes to the City of East Chicago. The Court should not and will not declare the statutes constitutionally infirm simply because the parties agree that their own hiring and promotion program should replace the statutory one.

6. The court held that the 1972 amendments to 42 U.S.C. § 2000e, which extended the coverage of Title VII to governmental agencies and political subdivisions, did not apply retroactively. Since all of the defendants' hiring practices challenged by the plaintiffs had ceased prior to 1972, the Title VII claim necessarily failed. The court held that *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), foreclosed the section 1983 claim.

trial.[7] The court also declined to award attorneys' fees to the plaintiffs.

On appeal the intervenor objects to the seniority points awarded to the minority firemen in the consent decree of May 31, 1977. Both the plaintiffs and the city defendants urge this court to uphold the consent decree.

The plaintiffs appeal from the judgment entered by the court on November 15, 1977. They object to the trial court's refusal to impose mandatory hiring quotas on the fire department. They also argue that they were prevailing parties and therefore entitled to recover attorneys' fees. The city defendants have not appealed the trial court's judgment holding that their past conduct violated section 1981 and are willing to validate all future application forms and examinations as well as to engage in affirmative action to encourage minority applicants in accordance with the trial court's decree. The defendants resist, however, the plaintiffs' requests for a more stringent remedy and an award of attorneys' fee.[8]

We hold that the district court did not abuse its discretion in approving the consent decree and in refusing to impose hiring quotas. We believe, however, that the court misapplied the test for awarding attorneys' fees in civil rights cases and, therefore reverse and remand the judgment for a determination of the proper amount of fees which should be awarded the plaintiffs.

## I. The Consent Decree

The May 31, 1977, consent decree set forth a series of facts detailing the percentage of minorities hired in the past and the present positions of minorities in the fire department from which it concluded "that there has been a disproportionate discrimi-

natory effect upon Black and Spanish surnamed individuals in the promotional process. . . ." The remedy granted was the award to all Black and Spanish surnamed individuals then employed by the fire department "an additional 15.25 seniority points, to be used for promotional purposes only." The order stated that, in accordance with the Indiana Act, no one would be considered for promotion who failed to achieve a passing score on the written examination for the position. Thus, the seniority points awarded were only considered after the written part of the exam was passed. Because the Indiana Act requires that all promotions be from the "next immediate lower rank," the order required that the tests be given first for the chauffeur position and that those who passed be appointed before the administration of the test for the next higher position. Consequently, conceivably one could move to the top of the promotional ladder upon passing each exam.

On appeal the intervenor-union argues that the Indiana Act, which was declared constitutional by the district court, protects the seniority of the majority firefighters and that since there was no showing of purposeful, intentional discrimination by the firemen themselves or by the department, the remedy granted by the court violated the seniority rights of the majority firemen. The union contends that the remedy creates "reverse discrimination" by according preferential treatment on the basis of race alone and thus is not an appropriate remedy under 42 U.S.C. § 1981 (which the intervenor assumes is the sole basis for the remedy).

The plaintiffs argue that the seniority points award is an appropriate remedy in a

---

7. In the pretrial order filed the day of the trial, the parties agreed:

(a) That the City of East Chicago through it's [sic] various administrative agencies, including the East Chicago Fire Civil Service Commission, will conduct an affirmative recruitment of minorities for future employment.
(b) All selective devices, including application forms, and all examinations used in mak-

ing initial hiring decisions will be validated in accordance with E.E.O.C. guidelines.

8. The State of Indiana, which participated in the proceedings in the trial court to defend the constitutionality of the Indiana Act, does not regard the trial court's order upholding the Act as being challenged before this court. In a letter to the clerk of this court it disclaims any interest in participating in these appeals.

section 1981 action and equally appropriate under Title VII, which was one of the possible bases for the remedy.[9] The city defendants, who also seek to have the consent decree upheld, argue that the intervenor has not presented a justiciable controversy because the majority firemen have suffered no actual injury. The defendants argue that no promotion was denied any majority fireman as a result of the seniority points award since the promotion examinations that have been given have not resulted in the promotion of any minority group member who would not have been promoted without the benefit of the extra seniority points.

■ Considering the last issue first, we believe that there is a justiciable controversy. The intervenor has standing to represent the rights of the union members as well as the right to appeal and present their objections to the consent decree to this court. If we were to hold that an intervenor did not have the right to raise questions as to the merits of a decree, it would make meaningless his right to intervene. *See* 3B Moore's Federal Practice ¶ 24.16[4] at 24–631 (1978). The union in this case was allowed to intervene to protect the interests of majority firefighters in their promotional seniority rights. The remedy approved by the court could have a direct effect upon those rights: it was designed to award seniority points to minorities which were not granted to majority firemen. An intervenor is bound by any order entered after his joining the litigation, and he may appeal from any appealable order unless intervention has been limited to forbid it. *In re First Colonial Corp.,* 544 F.2d 1291, 1297–98 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Although, if the defendants' representations to this court are true, no majority fireman has as yet been denied a promotion because of the court's decree, the remedy granted makes

such an event a distinct possibility. The positions of the parties are adverse and the controversy is real. We hold that the case is justiciable.

Reaching the intervenor's objection to the consent decree, we note that the standard governing our review is established by *Airline Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc.,* 573 F.2d 960 (7th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978), in which we observed that when an appeal is taken by an intervenor from a settlement, we do not review the settlement as if it were a judgment on the merits. *Id.* at 963–64. The issues raised by an objector to a settlement are to be resolved on the basis of legal principles regulating judicial review of settlement agreements. Therefore, when a district court is asked to approve a settlement, it need not reach and resolve the merits of the claims prior to granting approval. Rather, it is ordinarily sufficient if the court determines whether the settlement agreement is appropriate under the particular facts of the case. Our review, accordingly, is even more restrained.

■ It is a well settled principle that the law generally encourages settlements, *Florida Trailer & Equipment Co. v. Deal,* 284 F.2d 567 (5th Cir. 1960), and that Congress has clearly expressed its intent that settlements are the preferred means for resolving employment discrimination problems. Accordingly, when an agreement has been approved by the district court, it will not be reversed on appeal absent plain error or an abuse of discretion. *Upson v. Otis,* 155 F.2d 606 (2d Cir. 1946); *Florida Trailer & Equipment Co. v. Deal,* 284 F.2d 567 (5th Cir. 1960); *United Founders Life Insurance Co. v. Consumers National Life Insurance Co.,* 447 F.2d 647 (7th Cir. 1971).

Although the district court has an obligation when approving a settlement to set

---

**9.** They also argue in a footnote in their brief that relief could have been granted under 42 U.S.C. § 1983. In its judgment of November, 1977, the district court indicated that plaintiffs could not prevail on their section 1983 claim under *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct.

473, 5 L.Ed.2d 492 (1961). After the district court's judgment, however, the Supreme Court overruled *Monroe* in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

forth the reasoning which supports its conclusion in sufficient detail to make meaningful review possible, *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974), when an intervenor objects to a proposed settlement he also has an obligation. The very purpose of intervention is to permit the court to be apprised of the interests and objections of that party. As we noted in the *Stewardess* case, the intervenor should notify the court, request a hearing, and demonstrate why the remedy granted is unjustified. The burden is not on the district court to determine on some abstract basis the fairness of the settlement. 573 F.2d at 965.

In the instant case, the intervenor raised no objections before the court in response to this proposed consent decree, although objections to the earlier consent decrees had persuaded the court that it should not approve those settlements. The intervenor presented no evidence to the court and merely made a vague and general reference to "inverse discrimination." Although we are not finding that the intervenor waived its right to present its arguments against the settlement, we do find that the failure to expand upon the objections prevented the district court from addressing them in greater detail when it approved the settlement.

If this were a judgment on the merits, the intervenor might now convincingly argue that the decision in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), prevented the district court from awarding retroactive seniority points under Title VII where there were no violations after 1971 and the bona fide seniority system allegedly only "locked in" the effects of discriminatory conduct which antedated the amendment of Title VII to include units of local government. The *Teamsters* opinion, however, was handed down on the very same day that the district court gave its approval to this consent decree. Similarly, it is unnecessary for this court to decide whether if there was no Title VII violation, the promotional system could still be found violative of section 1981. *Compare Johnson v. Ryder Truck Lines, Inc.,* 575 F.2d 471 (4th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 1785, 60 L.Ed.2d 239 (1979) *and Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1191 n.37 (5th Cir. 1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979) *with Bolden v. Pennsylvania State Police,* 578 F.2d 912, 920–21 (3d Cir. 1978). To allow post-approval changes or clarifications in the law to upset a settlement would be contrary to the established policy of encouraging settlements and frequently would allow a party to back out of a bargained-for position after agreement had been reached. At least in the absence of unusual hardship to the objecting party, we decline to permit subsequent events to defeat otherwise reasonable settlements.

■ We find no evidence of unusual hardship here. A review of the record indicates that the trial court was sensitive to the rights of the majority firemen in framing relief for minority firemen. The consent decree was limited in its remedial effect. It related only to promotional seniority and made no intrusion upon competitive seniority for layoffs, rehiring, or benefits. Thus, it provided the plaintiffs relief without abandoning the role which seniority plays in ordering relations in the workplace. The trial court recognized, as we do, that the decree may as a practical matter impair the interests of some majority firemen, but as the Supreme Court noted in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 778, 96 S.Ct. 1251, 1271, 47 L.Ed.2d 444 (1976), "employee expectations arising from a seniority system agreement may be modified by statutes furthering a strong public policy interest." We find neither a clear error of law as it existed at the time of the settlement nor an abuse of discretion. The district court's order approving the settlement agreement must be left undisturbed.

## II. Adequacy of the Hiring Remedy

■ The plaintiffs object to the trial court's failure to impose "preferential nu-

merical hiring" on the fire department to remedy the violation of section 1981 that the district court found. The defendants counter this contention by arguing, first, that the court acted within its discretion in ordering relief less onerous than mandatory quotas and, second, that in any event no relief was appropriate because the plaintiffs failed to establish a section 1981 violation. We need not reach the defendants' second contention,[10] because we believe the trial judge acted well within his discretion in affording the plaintiffs less than all the relief they had requested.

We will assume, as plaintiffs urge, that the scope of the district court's remedial power is at least as broad under section 1981 as it is under Title VII. *See Waters v. Wisconsin Steel Works of International Harvester Co.,* 502 F.2d 1309, 1316 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Even so, the shaping of an appropriate remedy is, as plaintiffs concede, committed in the first instance to the discretion of the trial court. Moreover, "[p]referential numerical relief . . . remains an extraordinary remedy, and its use must be justified by the particular circumstances of each case." *United States v. City of Chicago,* 549 F.2d 415, 437 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). The district court considered the possibility of granting preferential numerical relief, but, after considering the evidence, ordering additional briefs, and considering the oral arguments of the parties, exercised its discretion to withhold it. Recognizing quotas as a remedy of last resort, the court concluded that the city had not been recalcitrant and that

the evidence did not establish that lass drastic remedies would prove ineffective in correcting the effects of past discrimination. Since the defendants had already agreed before trial to engage in affirmative action and to comply with EEOC guidelines, the court had reason to believe that their efforts would be in good faith and the result of those efforts satisfactory.

In addition to ordering this relief, the court required the city to make periodic progress reports. Retaining jurisdiction over the case in order to ensure compliance with its decree, the court noted that "should it appear in the future . . . that the relief outlined above is inadequate, this Court shall not hesitate in imposing stronger measures, including preferential numerical relief." 441 F.Supp. at 143. Thus, if, as the plaintiffs suggest, the relief granted proves ineffective, they may apply to the trial court for additional relief.

The trial court's conclusions are supported by the record and we cannot say that the court abused its discretion. Indeed, the record reflects the careful and deliberate efforts of a conscientious trial judge to accommodate the interests of the parties to this action and the members of the public who will be affected by the court's decree. We see no reason to second-guess his considered judgment.

### III. Attorneys' Fees

The plaintiffs' second argument on appeal is that the district court erroneously failed to award attorneys' fees. The court, apparently of the view that the case was a draw, decided that each party should bear the burden of its own attorneys' fees.[11]

---

10. The defendants have argued that section 1981 requires proof of discriminatory intent, but have not appealed from the trial court's judgment against them. *Cf. United States v. ITT Continental Baking Co.,* 420 U.S. 223, 226 n.2, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). In light of their willingness to comply with the present decree, we need not decide the difficult issue raised about the elements of section 1981. *Compare* the majority and dissenting opinions in *Davis v. County of Los Angeles,* 566 F.2d 1334 (9th Cir. 1977), *vacated as moot,* —— U.S. ——, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979).

11. The district court's opinion states:

The plaintiffs have asked the Court to award them, as the prevailing party in this lawsuit, costs and reasonable attorney fees. All concede, however, that such an award is left to the discretion of the Court. While the plaintiffs have established their case, their victory is neither complete nor total. The defendants have also prevailed on certain issues. Under these circumstances where both sides have been in part successful and unsuccessful in their argumentation, this Court

The plaintiffs argue that the award of fees is governed by the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 [12] and that the trial court erred in applying the test for an award of attorneys' fees. We agree and reverse the judgment of the district court and remand for a determination of the proper amount of the fee award.

We note initially that although the district court found that the defendants had violated section 1981, we need not base the applicability of the Fees Act upon the adjudication of a violation of one of the sections enumerated in the Act. The literal terms of the Act make it applicable "[i]n *any* action to *enforce*" section 1981. The authority of the court to award fees depends upon whether the plaintiff prevailed in a practical sense. "[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No.94–1011, 94th Cong., 2d Sess. 5 *reprinted in* [1976] U.S.Code Cong. & Admin.News 5912; *see, e. g., Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976), *aff'd sub nom. Parker v. Califano,* 182 U.S.App.D.C. 522, 561 F.2d 320 (1977) (construing parallel provision for Title VII actions). In this case, whether or not the plaintiffs proved a violation of section 1981, the claim was certainly not insubstantial and the litigation based upon it has served to benefit the class. It resulted in a grant of seniority points to presently employed minority firemen and the city's agreement to engage in affirmative action before the merits of the section 1981 claim were tried. The courts in these circumstances are understandably reluctant to unnecessarily decide the merits of a civil rights claim as a condition precedent to awarding attorneys' fees. *See Parker, supra; Gagne v. Maher,* 594 F.2d 336 (2d Cir.

1979). Thus, we decline to define the precise parameters of section 1981 when the defendant does not appeal from the relief granted under that section and the lawsuit has provided substantial benefits to the class even before the adjudication of the civil rights claim.

█ The defendants maintain that the Fees Act did not take effect until October 19, 1976, and that it would be inequitable. under these circumstances to apply it in an action commenced more than five years prior to that date, or that if the Act is applicable that an award of fees should be confined to those legal services rendered after the Act's enactment. We think it is clear, however, that the provisions of the Act do apply to actions pending on the date of its enactment, even though they were filed before that time. *Hutto v. Finney,* 437 U.S. 678, 694 n.23, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977). The legislative history of the Act clearly evinces Congress' intention that the Act apply in then pending litigation, *see Wharton v. Knefel,* 562 F.2d 550, 557 n.33 (8th Cir. 1977), and no manifest injustice will be worked by assessing fees against the defendants. The fact that a unit of local government, and ultimately its taxpayers, will shoulder the burden of the fee award does not by itself establish that the Act's "retroactive" application would be unjust. *See Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

█ We also believe that the plaintiffs are "prevailing" parties within the meaning of section 1988. It is true that they did not obtain all the relief that they sought. The legislative history of the Fees Act, however, indicates that a party seeking to vindicate

---

feels that the award of attorney fees to one side alone would be unjust. Accordingly, this Court declines to award attorney fees to the plaintiffs.

However, with respect to costs, this Court feels that the plaintiffs are entitled to such an award. Accordingly, the plaintiffs are now awarded their costs in this action.

441 F.Supp. at 143.

12. 42 U.S.C. § 1988 provides in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

rights secured by the civil rights acts need not prevail on all the contested issues in order to be considered a "prevailing party." *See* S.Rep.No.94–1011, 94th Cong., 2d Sess. 5 *reprinted in* [1976] U.S.Code Cong. & Admin.News 5912. The Senate Report, for example, cites with approval *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970), in which the plaintiff in a Title VII action was awarded attorneys' fees even though he failed to recover back pay and the court held that injunctive relief against the defendant was inappropriate. The court noted:

> Although we find no injunction warranted here, we believe Parham's lawsuit acted as a catalyst which prompted the appellee to take action implementing its own fair employment policies and seeking compliance with the requirements of Title VII. In this sense, Parham performed a valuable public service in bringing this action.

*Id.* at 429–30. Similarly, we think this litigation did provide substantial benefits to the named plaintiffs and to members of the class. It thus operated as a catalyst prompting the defendants to institute fair employment practices. Accordingly, we find the plaintiffs to be prevailing parties in this action.[13]

Although the Fees Act on its face provides that whether to award attorneys' fees is within the discretion of the court, the history of the provision makes it clear that the trial court's discretion is narrow:

> It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

S.Rep.No.94–1011, 94th Cong., 2d Sess. 4 *reprinted in* [1976] U.S.Code Cong. & Admin.News 5912. In *Davis v. Murphy,* 587 F.2d 362, 364 (7th Cir. 1978), we noted that "a prevailing plaintiff should receive fees almost as a matter of course."[14] We do not believe that the trial court, when exercising its discretion, followed this standard and are not convinced that any special circumstances exist that would render an award of

---

13. Of course, the circumstances of each case must be individually considered in determining who is the prevailing party. In *Roesel v. Joliet Wrought Washer Co.,* 596 F.2d 583 (7th Cir. 1979), this court affirmed the trial court's refusal to grant requests for attorneys' fees by both the defendant and the plaintiff in a Title VII action. We remarked that "[u]nder the circumstances, with each party prevailing in some part, it seems sound to award fees to neither." 596 F.2d at 187. Aside from the fact that *Roesel* was not decided under the Fees Act, it is distinguishable from the present action because it was an action on behalf of a single individual. A class action like the present case may ordinarily be expected to yield a broader public benefit than an individual action. Moreover, in *Roesel,* the plaintiff failed to obtain relief on one of her two claims—and that probably the more important claim. Here, the plaintiffs have obtained relief for both segments of the class that they represented—prospective as well as present minority employees. On the whole. we conclude that the plaintiffs have prevailed in this litigation. Although they did not obtain all the relief they desired, the case cannot be considered a draw.

14. The same rule does not apply, however, if it is the party who is claimed to have violated another's civil rights who prevails in the litigation:

> "[P]rivate attorneys general" should not be deterred from bringing good faith actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose. *Richardson v. Hotel Corporation of America,* 332 F.Supp. 519 (E.D.La.1971), aff'd, 468 F.2d 951 (5th Cir. 1972). A fee award to a defendant's employer, was held unjustified where a claim of racial discrimination, though meritless, was made in good faith.) Such a party, if unsuccessful, could be assessed his opponent's fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes. *United States Steel Corp. v. United States,* 358 F.Supp. 346 (W.D.Pa.1974), aff'd, 9 E.P.D. ¶ 10,225 (3d Cir. 1975).

S.Rep.No.94–1011, 94th Cong., 2d Sess. 5 *reprinted in* [1976] U.S.Code Cong. & Admin. News, p. 5912. *See also Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

attorneys' fees unjust. Consequently, we reverse and remand the judgment of the trial court for a determination of reasonable attorneys' fees. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In all other respects, the judgment of the district court is affirmed.

Affirmed In Part And Reversed And Remanded In Part.