Johnnie G. JONES et al., Plaintiffs,

v.

MILWAUKEE COUNTY et al., Defendants.

No. 74-C-374.

United States District Court,
E. D. Wisconsin.

March 10, 1980.

---

See also, D.C., 68 F.R.D. 638, D.C., 441 F.Supp. 455.

Jeffery R. Myer, Legal Action of Wisconsin, Milwaukee, Wis., and Patrick O. Patterson, New York City, for plaintiffs.

Gerard S. Paradowski, Patrick J. Foster, Asst. Corp. Counsel, Franklyn M. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for Milw. Deputy Sheriff's Assoc.

Ruth Q. Brown, Milwaukee, Wis., for Affirmative Action-Chairperson.

Milton Rosenberg, Indian Law Center, University of Wis., Law School, Madison, Wis., for Milw. Indian Urban Affairs.

Nola J. Hitchcock Cross, Podell, Ugent & Cross, Milwaukee, Wis., for Dist. 48.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

After five and one half years of litigation, this action is before me on the joint motion of the parties to approve a consent order to which they have agreed.

## I. BACKGROUND

The plaintiffs filed this class action on September 5, 1974, seeking relief from unlawful discriminatory practices with respect to employment, transfer, and promotion of minority persons in the classified service of Milwaukee County. The challenged employment practices are claimed to violate Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq.

On September 26, 1975, the action was certified as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure. The class is defined as follows:

> "All black, Spanish-surnamed, and American Indian persons who are capable of performing, or of being trained to perform, the work in positions in the classified service of Milwaukee County, and who have been denied employment in or transfer or promotion to, or who have been discouraged from applying for employment in or transfer or promotion to, such positions because of their race or national origin."

On June 29, 1976, the court granted preliminary injunctive relief to the plaintiffs for all position titles in the categories of office/clerical, protective service, and skilled crafts. The defendants were enjoined to appoint qualified class members to vacate permanent positions in these three job categories in which the percentage of minority persons employed was less than the percentage of minority population in Milwaukee County, which was 12.1% according to the 1970 census. The court further ordered that the defendants prepare an affirmative action plan for two other job categories, officials/administrators and pro-

fessionals. An affirmative action plan was approved by the court, after proceedings before a special master, on October 16, 1978.

On May 1, 1979, the court granted the plaintiffs' motion for partial summary judgment on the issue of liability for discrimination in hiring and promotion in the job categories of office/clerical, protective service, skilled crafts, service/maintenance, officials/administrators, and professionals. The court's granting of the plaintiffs' motion was based in part on the conclusion "that the unvalidated selection procedures and employment requirements used by the defendants operate disproportionately to exclude minority persons from employment and promotions in jobs with the classified service." Decision and order of May 1, 1979, page 5.

## II. THE PROPOSED CONSENT ORDER

On December 17, 1979, the parties jointly filed the instant motion seeking the court's approval of the consent order agreed to by the parties. A brief summary of the provisions of the consent order follows:

A. *Back Pay* (¶¶ 5–51): The proposed consent order contains a detailed description of who is entitled to back pay and formulas for determining the amount of compensation to which each person is entitled. Class members do not need to make a formal application to receive back pay. If the court approves the consent order, the plaintiffs' attorneys have 75 days to identify the persons entitled to back pay and the amount due each person.

B. *Hiring and Promotion* (¶¶ 52–73): The proposed consent order sets goals for each position title in each category of the classified service. With the exception of position titles in the officials/administrators and professionals categories, ratio appointment must be used until the goals are reached. For position titles in the officials/administrators and professionals categories, ratio appointment need not be used unless the goals are not reached by December 31, 1981, or December 31, 1982. Ratio appointment does not require that any particular person be appointed, only that a class member be appointed.

The proposed consent order also requires that after the goals are reached, hiring and promotion shall be done in a manner which either has no adverse impact on class members or has been validated according to law.

The proposed consent order provides that if a class member accepts a promotion and does not pass the probationary period, the person will be placed at the top of the reinstatement list, ahead of persons who are otherwise on the reinstatement list.

C. *Seniority* (¶ 74): The consent order provides that all class members who applied for positions on or after March 24, 1970, shall be credited with seniority for competitive purposes only (such as shift preference and layoff), retroactive to March 24, 1972, or the last day of the month of the application if after March 24, 1972.

D. *Recruitment and Application Procedures* (¶¶ 75–78): The consent order requires defendants to advertise certain job announcements in minority-oriented media and to continue the practice of announcing examinations through information placed in pay envelopes. For certain position titles, examinations must be announced if no minorities are on existing eligible lists. Affirmative action training of supervisory personnel would be mandatory.

E. *Record-keeping Reporting Requirements* (¶¶ 79–84): The defendants are required to submit to plaintiffs' attorneys relevant data relating to recruitment efforts, applications and testing, and promotion and hiring.

F. *Attorneys' Fees* (¶ 86): The proposed consent order provides that the parties will negotiate in good faith concerning plaintiffs' claim for an award of costs, including reasonable attorneys' fees.

G. *Supplemental or Corrective Relief* (¶ 87): The court retains jurisdiction to grant relief upon application by any party.

H. *Named Plaintiffs' Relief* (¶¶ 3–9): The proposed consent order provides specific relief for the named plaintiffs who brought the case.

After extensive notice of the proposed settlement agreement appeared in local newspapers, the court held a hearing on February 15, 1980, for the purpose of receiving evidence and hearing arguments on the question whether the proposed consent order is fair, adequate, and reasonable and should be approved by the court. At the hearing, ten persons, in addition to the counsel for the parties, presented their views on the proposed consent order. Following the hearing, interested persons were given the opportunity to file any additional comments regarding the consent order in writing. At the hearing and in memoranda filed subsequent to the hearing, essentially five objections were made to the proposed consent order. I will address each of these objections later in this decision.

## III. LEGAL STANDARD TO BE APPLIED TO THE INSTANT MOTION

The court of appeals for this circuit has held that when a district court, pursuant to Rule 23(e), Federal Rules of Civil Procedure, seeks to determine whether to approve the settlement of a class action, the court must determine whether the proposed settlement is "fair, reasonable and adequate." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir., February 19, 1980). In *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979), the court of appeals also elaborated on the district court's function in this situation:

"... when a district court is asked to approve a settlement, it need not reach and resolve the merits of the claims prior to granting approval. Rather, it is ordinarily sufficient if the court determines whether the settlement agreement is appropriate under the particular facts of the case."

The court of appeals for this circuit has also recently indicated the favorability with which settlement agreements are to be generally viewed:

"It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settle-ment. *U. S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977); *Du Puy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976). In the class action context in particular, 'there is an overriding public interest in favor of settlement.' *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*" *Armstrong v. Board of Directors of the City of Milwaukee*, supra, at 312–313.

Moreover, the favorability with which settlements are viewed is especially strong in the context of employment discrimination suits:

"It is a well settled principle that the law generally encourages settlements, ... and that Congress has clearly expressed its intent that settlements are the preferred means for resolving employment discrimination problems." *Dawson v. Pastrick*, 600 F.2d at 75.

Balanced against the public interest in settlements are two potentially countervailing interests. First, is the interest of members of the class not directly involved in the negotiation of the settlement. The court must consider whether the proposed consent order is in the best interest of the class as a whole and not just favorable to a few class members or class counsel. *Armstrong v. Board of Directors of the City of Milwaukee*, supra, at 313. Second, the court must be mindful that a class action such as the one at bar affects not only the plaintiff class members and the defendants, but other members of the public as well. Accordingly, in reviewing the terms of the settlement, I must consider its implications for the public interest. *Id.* at 313.

With these considerations in mind, I now turn to my analysis of the fairness, reasonableness and adequacy of the proposed consent order.

## IV. FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED CONSENT ORDER

Before turning to the specific objections made to the consent order, I will speak more generally as to the fairness and adequacy of the proposed order. In my judgment, the proposed order represents a fair and reasonable solution to a difficult problem. The proposal reasonably protects the interest of plaintiff class members, without unduly prejudicing the interests of non-class members. I find that the plaintiffs' counsel has done a satisfactory job in representing a heterogeneous class.

I believe that the proposal reflects the relative strength of the plaintiffs' case on the merits, which was also reflected in the preliminary injunction and summary judgment order previously granted in this case. At the same time, the proposal demonstrates the recognition by all the parties of the large amounts of time and expense that further litigation of this suit would have entailed, and the complicated task that would have been presented to the court if it had to arrive at a remedy in this case without the aid of agreement by the participants in this controversy.

Finally, I note that perhaps the strongest testimony in favor of the proposed consent order is the nature of the objections to the order. Even those persons who have raised thoughtful objections to the consent order have endorsed the general format of the proposal while objecting to a single paragraph or sentence. I now turn to the specific objections raised during the hearing and subsequent briefing period.

### A. *Seniority* (¶ 74)

 Paragraph 74 of the proposed consent order provides that class members who applied on or after March 24, 1970, shall be credited with seniority retroactive to March 24, 1972, or the last day of the month of their application if after March 24, 1972. The Milwaukee County Sheriff's Association (MCDSA) objects to this provision, arguing that it is "in direct violation of the rights of Milwaukee County Sheriffs under their current collective bargaining agreement."

An affirmative action plan which sets goals as to hiring or promotion or which makes provision for increasing the seniority of class members necessarily will involve relative disadvantage to non-class members. The justification for affirmative action is that it is necessary to compensate for the effects of past discrimination. The Supreme Court has recognized that an integral part of "make whole" relief is the granting of retroactive seniority. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Moreover, the Court, in *Franks*, specifically recognized that such relief is appropriate even though it may be disadvantageous to certain non-class members:

"... we find untenable the conclusion that this form of relief may be denied merely because the interests of other employees may be affected. 'If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed.'" 424 U.S. at 775, 96 S.Ct. at 1269.

Furthermore, in *Franks*, the Court noted that retroactive seniority is appropriate even if it conflicts with previous employment contractual provisions:

"Certainly there is no argument that the award of retroactive seniority to the victims of hiring discrimination in any way deprives other employees of indefeasibly vested rights conferred by the employment contract. This Court has long held that employment expectations arising from a seniority system agreement may be modified by statutes furthering a strong public policy interest." 424 U.S. at 778, 96 S.Ct. at 1271.

Since the seniority provisions of the proposed consent order are an integral part of the enforcement of the "strong public policy" embodied in Title VII, I find no merit to the MCDSA's claim that because those provisions conflict with the sheriffs' bar-

gaining agreement with the county, the proposed order should not be approved.

▆ Moreover, I find no merit in the argument raised by the MCDSA at the hearing that the seniority provisions of the consent order should not be applied to the sheriff's department because no proof of past discrimination on its part had been shown. The MCDSA's argument ignores the fact that in the court's decision of May 2, 1979, granting summary judgment to the plaintiffs on issues of liability, I found employment discrimination in the protective services job category, which includes the sheriff's department. Decision and order of May 2, 1979, page 7. In addition, the parties' agreement to an affirmative action program need not be preceded by a judicial finding of past discrimination. See e. g., *United Steelworkers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

Finally, the MCDSA seeks to add to ¶ 74 the following language:

"Seniority provisions contained within the collective bargaining contract between Milwaukee County and the Milwaukee Deputy Sheriff's Association will remain in full force and effect for all covered employees, not members of the class."

The Association argues that this language will help avoid confusion about the respective seniority rights of one non-class member against another. Paragraph 74 explicitly sets out a method of calculating seniority for class members. As such it necessarily affects the seniority ranking of non-class members as compared to class members. Paragraph 74 does not purport, except in one limited instance, to provide a method of calculating seniority for non-class members, and I find that this fact is sufficiently clear without adding the language proposed by the MCDSA.

B. *Probationary Periods for County Employees* (¶ 72)

▆ In my decision and order of May 2, 1979, I found that the selection procedures used by the defendants operated disproportionately to exclude minority persons from promotions within the classified service. Decision and order of May 2, 1979, pages 5, 18–20. The record in this case indicates that persons seeking promotion must work through a probationary period at the end of which they are evaluated largely by non-minority supervisors to determine whether they should be retained in the promoted position. Many of the criteria used in these evaluations are highly subjective, including such factors as "tact," "voice or speech," "alertness," and "attitude."

In view of these facts, paragraph 72 of the proposed consent order provides a mechanism which is designed to encourage class members to seek promotions:

"Class members who receive an appointment to a different position title but who do not successfully complete their probationary period or who desire to return to their former position shall be permitted to return to their former position if it remains vacant. If the former position has been filled, defendants will make all reasonable efforts to place such employee in another position in the former position title, or if no vacancy exists, to a position title in a lower pay range. Employees not returned to the former position title shall be placed on the appropriate reinstatement list ahead of all other employees except class members who have been on the reinstatement list longer."

Milwaukee District Council 48, American Federation of State, County and Municipal Employees, AFL–CIO, has objected to the last sentence of ¶ 72. The union proposes that this sentence be modified to give employees who have failed probation a place at the head of the reinstatement list "for the purpose of filling every other vacancy in the title class."

In comparing the two proposals, it is apparent that ¶ 72, as proposed by the parties, gives greater protection to those persons seeking promotions and thereby creates a greater incentive for employees to seek promotions than under the format proposed by the union. On the other hand, the union's proposal will generally benefit non-class

members who find themselves on a reinstatement list at the same time as employees who have sought promotions.

While both proposals have arguable merit, it is the proposal presented by the parties which ultimately must be scrutinized. I find that it fairly addresses a legitimate concern, that is that minorities in the past have been the subject of discrimination in promotions within the classified service. The fact that the parties' proposed solution to this problem puts non-class members at a disadvantage in certain instances is of concern, but I nonetheless find that ¶ 72 as proposed by the parties is a reasonable balancing of these divergent interests.

### C. Victims of Past Discrimination

■ Ruth Brown, past president of a union local with approximately 2400 members employed by Milwaukee County, objects to the consent order on the ground that it does not provide an adequate remedy for those persons who were personally subject to discrimination in the past, as opposed to merely being members of a class of persons against whom discrimination occurred. She suggests that persons who were personally the victims of discriminatory treatment should have priority over other members of the class for the purpose of hiring. She also suggests that those persons who have successfully passed employment tests in the past not be required to take such examinations again in order to qualify for employment.

In responding to Ms. Brown's contentions, the plaintiffs' attorneys point out that due to the size of the class any attempt to identify individuals who actually were subject to discrimination would be a difficult task. They also point out that many class members took examinations over ten years ago and that as a result, the present validity of the results of such examinations is questionable.

Although Ms. Brown's contentions may be characterized as reasonable, I find that the parties have even more cogent explanations for not incorporating her suggestions into the consent order. The essential fairness of the proposed order is not undermined by the omission of such suggestions.

### D. Appointment of a Special Master

■ Several parties at the hearing and subsequent to the hearing have suggested that the court should appoint a permanent special master to hear grievances of persons following entry of the consent order. I do not find such a step to be necessary at this point.

Paragraph 87 of the proposed order provides:

"The court shall retain jurisdiction of this action for such supplemental relief or corrective relief as may be necessary or appropriate upon application by any party. Plaintiffs will notify defendants of any problems of noncompliance with this order which they believe warrant investigation. Defendants shall have 30 days to investigate the complaint and negotiate with plaintiffs regarding the seeking of any appropriate corrective or supplemental relief. At the end of this period, the plaintiffs, if not satisfied, may seek an appropriate resolution by the court."

At this point it is too early to determine what difficulties may occur in implementing the consent order. Employee grievances which arise under the order may be processed with the court as provided in ¶ 87. Moreover, employees with grievances also have recourse to the courts and other neutral arbiters through Title VII, state equal employment laws, and arbitration clauses in their collective bargaining agreements.

Should these mechanisms turn out to be insufficient to deal with grievances arising out of the implementation of this order, under the terms of ¶ 87 this court would still have the power to appoint a special master. Accordingly, I do not find it presently necessary to incorporate the appointment of a permanent special master into the proposed consent order.

### E. Treatment of Indians

■ An objection to the present form of the consent order has been filed on behalf

of the Milwaukee Indian Urban Affairs Council and two individuals connected with that group. They contend that the hiring goals for "minorities" do not insure that subclasses of minorities, such as Indians, will be hired and promoted as a result of the proposed consent order. They also object to the fact that the paragraph of the proposed order dealing with publicity regarding employment examinations (¶ 75) provides for specific advertising directed to the black and Latin communities, while not making any similar provision for the Indian community. Finally, they express concern with whether those who claim the fruits of the proposed order as Indians will actually be Indians. As a remedy for these issues, the Council, with support from other Indian groups, proposes that the court order the creation of a county affirmative action position specifically targeted toward working with the Indian community.

According to the 1970 census, American Indians constituted 0.35% of Milwaukee County's population. That relatively small percentage leads the Council to concede that it would be impossible to set up goals for the hiring of Indians within specific position titles. The Council urges, however, that proportional goals for the hiring of Indians across broader job categories would be statistically feasible. The use of subclass goals across broad job categories would not insure that members of a given subclass were being hired and promoted into higher paying positions. This goal can only be realized by goals within specific job titles which are provided by the plan proposed by the parties.

Moreover, there is no basis for the Council's suggestion that "one ethnic group" will occupy all the positions opened by virtue of the consent order. The county presently employs members of each group comprising the plaintiff class. Assuming that members of each group are equally informed of job openings and employment examination dates, there is no reason to believe that only members of one of the groups would apply or be hired.

This assumption is based on the premise that notice of job openings and examination dates will be disseminated to all members of the class. Paragraph 75 of the proposed consent order provides:

"For all position titles required by this consent order to be filled by ratio appointment for which no minorities are on an eligible list, defendants shall announce and hold new examinations. For such position titles the examination announcement shall be advertised by placing for broadcast on each of two radio stations and two newspapers specializing in service to the black community and over one radio station program and one newspaper specializing in service to the Latin community information describing employment opportunities, general requirements and procedures for making applications, and a statement that such positions will be filled by ratio hiring."

In my opinion, the Council raises a valid objection to ¶ 75 insofar as it provides for publicity regarding examinations to be disseminated in the black and Latin communities without similar provision for the Indian community. Accordingly, my approval of the proposed consent order will be with a modification to ¶ 75 so that it provides:

"For all position titles required by this consent order to be filled by ratio appointment for which no minorities are on an eligible list, defendants shall announce and hold new examinations. For such position titles the examination announcement shall be advertised by means which will reasonably reach members of the black, Latin and Indian communities. Such advertisements shall describe employment opportunities, general requirements and procedures for making applications, and a statement that such positions will be filled by ratio hiring."

I contemplate that the parties will be able to agree on those means which will reasonably reach members of the plaintiff class, including Indians. Paragraph 87 of the consent order provides a mechanism for the resolution of any dispute that might arise as to this issue.

724

Finally, as to the Council's suggestions that the consent order include a definition of the term "Indian" or the appointment of an affirmative action officer for Indians, I find these proposals to fall within the category of suggestions which are reasonable but are unnecessary to insure fairness under the consent order. The defendants have no interest in hiring people who fraudulently claim to be Indians; they should therefore be amenable to suggestions from the Council as to how to avoid such fraud. There is no suggestion in the record that the county's present affirmative action officer is unresponsive to the needs of American Indians or that the hiring of minorities should be facilitated if every group in the plaintiff class had its own affirmative action officer working for the county.

### V. CONCLUSION

To summarize, I find that the consent order proposed by the parties, with one modification as indicated, is reasonable, and fairly protects the concerns of both members of the plaintiff class and the public.

Therefore, IT IS ORDERED that the joint motion of the parties for approval of their proposed consent order be and hereby is granted, with the proviso that ¶ 75 of said order be modified as provided herein.