730 F.2d 509
 34 Fair Empl.Prac.Cas. 740,
34 Empl. Prac. Dec. P 34,301
Nancy FREEDMAN, et al., Plaintiffs-Appellants,
v.
AIR LINE STEWARDS & STEWARDESSES ASSOC., LOCAL 550, TWU,
AFL-CIO & Trans World Airlines, Inc., Defendants-Appellees,
Independent Federation of Flight Attendants, Intervenor-Appellee.
Mary Ellen GILES, et al., Plaintiffs-Appellants,
v.
TRANS WORLD AIRLINES, INC., Defendant-Appellee,
Independent Federation of Flight Attendants, Intervenor-Appellee.
AIR LINE STEWARDS & STEWARDESSES ASSOCIATION, LOCAL 550,
TWU, AFL-CIO, et al., Plaintiffs,
and
Carol Holmes, et al., Plaintiffs-Intervenors-Appellants,
v.
TRANS WORLD AIRLINES, INC., Defendant-Appellee,
Independent Federation of Flight Attendants, Intervenor-Appellee.
 Nos. 83-1930 to 83-1932.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1984.
Decided March 27, 1984.
 
 Kenneth N. Flaxman, Chicago, Ill., for plaintiffs-appellants.
 Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., Steven A. Fehr, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for defendants-appellees.
 Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 The plaintiffs-appellants here are former Trans World Airlines, Inc. ("TWA") stewardesses whose employment was terminated due to TWA's former "no motherhood" policy for female flight attendants. They are appealing from a decision of the district court refusing to amend a consent decree entered pursuant to a settlement agreement which resolved a suit based on the plaintiffs' claim of sex discrimination against TWA. We affirm the order of the district court.
 
 
 2
 * Procedural Background
 
 
 3
 In 1970, the Air Line Stewards and Stewardesses Association ("ALSSA"), then the collective bargaining agent of TWA flight attendants, brought a class action suit against TWA alleging that TWA practiced unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1970).[1] This alleged discrimination consisted of TWA's policy of grounding all female flight cabin attendants who became mothers while permitting their male counterparts who became fathers to continue flying. TWA agreed to end the policy prospectively and the parties reached a tentative settlement which was approved by the district court. This court, however, found that ALSSA was an inadequate class representative because of conflicting interests of the former and current flight attendants, both of whom were represented by ALSSA. We therefore remanded the case to the district court for appointment of new class representatives. Air Line Stewards and Stewardesses Association v. American Airlines, Inc., 490 F.2d 636 (7th Cir.1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974).
 
 
 4
 Upon remand, TWA amended its answer to assert that the claims of most class members (approximately 92% of the class) were barred because they had failed to file charges with the Equal Employment Opportunity Commission ("EEOC") within the statutory time limit.[2] The district court stated that the Title VII filing requirements were jurisdictional but denied TWA's motion to exclude the affected class members on the ground that TWA's violation continued against all class members until TWA changed its challenged policy. The district court subsequently granted plaintiffs' summary judgment motion on the issue of TWA's liability for violating Title VII. On appeal, this circuit affirmed the grant of summary judgment but held that timely filing of EEOC claims was a jurisdictional prerequisite which TWA could not waive, declined to adopt the continuing violation approach and so found that approximately 92% of the plaintiff class was jurisdictionally barred.[3] In re Consolidated Pretrial Proceedings in the Airline Cases, 582 F.2d 1142 (7th Cir.1978). This circuit stayed issuance of its mandate while plaintiffs filed petitions for certiorari with the Supreme Court, but the Supreme Court stayed its consideration of the issues pending outcome of settlement proceedings in the district court.
 
 
 5
 The parties thus entered into a settlement agreement before the Supreme Court considered the merits of the issues. The most relevant provisions of the agreement concern the award of retroactive seniority. All members of the plaintiff class who returned to work were given full company and union competitive seniority. The agreement provided:
 
 
 6
 A. Each re-employed class member shall be credited with the amount of company seniority and length of service to which she was entitled at the date on which her employment was terminated plus company seniority and such length of service for the entire compensation period, except for those periods of time during which she was disabled from working by reason of pregnancy or otherwise....
 
 
 7
 B. It is agreed that the total amount of seniority and credit for length of service (both accrued and retroactive) for the compensation period will be determined by the Court in its discretion, pursuant to ... all ... applicable provisions of law, without consent or objection by TWA....
 
 
 8
 Appellants' Appendix at 6a-7a; 24.
 
 
 9
 While TWA was barred, under the terms of the Settlement Agreement, from objecting to the district court's determination of the amount of seniority to be awarded, the Independent Federation of Flight Attendants ("IFFA"), which had replaced ALSSA as the collective bargaining agent for the incumbent flight attendants, was permitted to intervene and to object to the settlement terms. The district court, however, rejected IFFA's claim that the court did not have jurisdiction to enter an order regarding the class members whose claims had previously been barred (Subclass B, supra n. 3) because this circuit had not issued its mandate in the previous appeal with respect to the jurisdictional issue. The district court subsequently approved the Settlement Agreement, found that "full restoration of retroactive seniority would not have an unusual adverse impact upon currently employed flight attendants in any way atypical of Title VII cases," and awarded credit for seniority for the full "compensation period"[4] for the entire plaintiff class. District Court Order Awarding Seniority, entered November 8, 1979, Appellants' Appendix at 30.
 
 
 10
 IFFA appealed this decision of the district court on the ground that the court lacked jurisdiction to approve a settlement with respect to Subclass B of the plaintiff class (consisting of those plaintiffs whose claims had been held to be barred because of untimely filing with the EEOC, supra n. 3). This court, however, held that the district court had jurisdiction to enter an order regarding the settlement, relying on the policy favoring settlement of class action lawsuits, and affirmed the award of seniority. Airline Stewards and Stewardesses Association v. Trans World Airlines, Inc., 630 F.2d 1164, 1169 (7th Cir.1980).
 
 
 11
 Upon IFFA's appeal to the Supreme Court, the Court, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), held that the timely filing of a discrimination charge "with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," id. at 393, 102 S.Ct. at 1132,[5] thus reversing our decision in In re Consolidated Pretrial Proceedings in the Airline Cases, 582 F.2d 1142 (7th Cir.1978). The district court thus clearly had jurisdiction to award relief to all members of the plaintiff class. The Supreme Court also rejected various other claims of IFFA and dismissed TWA's petition for certiorari on this circuit's affirmance of the summary judgment granted for plaintiffs on the issue of TWA's liability for discrimination.
 
 
 12
 Following the decision in Zipes, the plaintiff class filed several motions in the district court, two of which form the basis for this current appeal. One of these, the "Motion for Modification of Order Awarding Seniority," filed on August 31, 1982, requested that the court change the amount of competitive seniority awarded to those class members who returned to work. Appellants' Appendix at 37-40. The second motion, "Motion to Enforce Certain Terms of the Settlement Agreement," filed October 5, 1982, requested that the district court permit class members who had originally opted not to return to work to change their minds and seek reinstatement. Appellants' Appendix at 61-68. Both motions were opposed by TWA and by IFFA.[6] In an order dated April 21, 1983, the district court denied both these requests with respect to the consent decree enforcing the Settlement Agreement. Appellants' Brief, Short Appendix at 1-15. Three notices of appeal were filed by various members of the plaintiff class, both individually and on behalf of the class, and the three appeals have now been consolidated.
 
 II
 Seniority
 
 13
 Both the Settlement Agreement and the district court order awarding back seniority define the amount of competitive seniority to which each returning class member is entitled in terms of the "compensation period." The "compensation period" is clearly defined in the Settlement Agreement as the period between the date when each member's employment was terminated and the date when TWA signed the Settlement Agreement. This date was June 18, 1979. However, because of the intervention by IFFA, the Settlement Agreement did not become final until April 19, 1982, and the stewardesses did not begin to return to work until during the following year--three to four years after the Settlement Agreement was reached.
 
 
 14
 The plaintiffs-appellants' request for modification of the order entering the Settlement Agreement centers on their contention that they should be awarded competitive seniority for the full period from their original discharge up to the time of reinstatement.[7] Appellants' argument is based on two theses: first, that the change of circumstances occasioned both by the Supreme Court's ruling in Zipes and by the delay caused by IFFA's intervention necessitates a modification; second, that the district court had a duty to grant full retroactive seniority because, following the Zipes decision, it was required to provide a "make whole" remedy under Title VII.
 
 
 15
 Appellants are correct in stating that Title VII envisioned a "make whole" remedy designed to ensure total eradication of employment discrimination and that the award of full back seniority is often required in order to accomplish this goal. Franks v. Bowman Transportation Co., 424 U.S. 747, 762-70, 96 S.Ct. 1251, 1263-67, 47 L.Ed.2d 444 (1976). Appellants are also correct in asserting that a decree entered by a court--whether the result of litigation or of a settlement agreement--is subject to subsequent modification in the proper circumstances even if the power to modify has not been specifically reserved in the decree. United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932).[8]
 
 
 16
 In Swift, the Supreme Court articulated the standard to be applied in determining when modification of a judicial decree is permitted. There, the defendants, who had entered into a consent decree following antitrust proceedings brought by the United States, subsequently sought modification of that decree. The Court stated:
 
 
 17
 No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.
 
 
 18
 Id. at 119, 52 S.Ct. at 464. An example of an unforeseen change of conditions necessitating modification of a decree is provided in System Federation No. 91 v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), in which the Supreme Court held that a consent decree prohibiting a railroad and certain unions from discriminating against nonunion employees should be modified after the Railway Labor Act was amended. See also Boston Chapter, NAACP v. Beecher, 679 F.2d 965, 971-73 (1st Cir.1982) (massive layoffs of recently hired police and firefighters with large proportion of minorities caused by unforeseeable enactment of severe budget restrictions necessitated modification of consent decree), vacated for consideration of mootness, --- U.S. ----, 103 S.Ct. 2076, 76 L.Ed.2d 330 (1983). Cf. Fox v. United States Department of Housing and Urban Development, 680 F.2d 315, 322-24 (3d Cir.1982) (frustration of plaintiffs' expectations by changes in mortgage market not sufficiently extraordinary to require change in consent decree).[9]
 
 
 19
 Appellants must therefore demonstrate that the changes in circumstances, which they argue justify a modification of the court's order, were both unforeseeable and extraordinary and imposed a significantly heavier burden on them. The changes in circumstances, however, were not unforeseeable. Although the Settlement Agreement prohibited TWA from contesting the terms of the court order, IFFA was not mentioned in this prohibition. That IFFA might object would have been predictable both because the agreement was patently adverse to the interests of current employees represented by IFFA and because this circuit's prior decision that incumbent and former employees should be separately represented clearly indicated the inimical interests of the two groups. Further, some delay between TWA's signing of the agreement and the reinstatement of former employees was anticipated, even though the delay may have been longer than expected. Thus, although the greater delay imposed a heavier burden (by delaying the time of reinstatement and thus the accumulation of additional seniority), this burden cannot be said to be excessively harsh or to frustrate the entire purpose of the settlement.
 
 
 20
 Finally, the Supreme Court's decision in Zipes did not represent an unforeseeable change of law comparable to the legislative enactments of System Federation and Boston Chapter, NAACP. The chances of the outcome of litigation before the Supreme Court represented precisely the calculated risks which both parties took in deciding to terminate the suit through settlement. That one party in hindsight would have been better off in pursuing its remedies through litigation does not now justify a modification of the terms of that settlement. Such a modification at this juncture and under these circumstances would also significantly undermine the judicial policy of encouraging settlements. As this court stated in proceedings approving another settlement entered into earlier in this course of litigation, when the EEOC attempted to intervene arguing that the settling plaintiffs would have received greater relief by litigating, "... the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation. This is especially true within the confines of Title VII where 'there is great emphasis * * * on private settlement and the elimination of unfair practices without litigation.' " Air Lines Stewards and Stewardesses Association, Local 550 v. American Airlines, Inc., 455 F.2d 101, 109 (7th Cir.1972) (quoting Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir.1968)). Because the change of circumstance was neither unforeseeable nor so exceptional as to satisfy the standard for modification of a decree, we therefore affirm the district court's refusal to award additional back seniority to the appellants.
 
 III
 Change of Mind
 
 21
 Appellants also requested that the district court permit certain former employees who, at the time of the settlement in 1979, indicated that they did not wish to return to work to change their minds now and seek reinstatement. Class members who wished to return to work were required to file a claim form by December 2, 1979, which included questions concerning their former employment by TWA. In addition, in a question not specified in the Settlement Agreement as being required to be included on the claim form, the former stewardesses were asked whether they sought re-employment with TWA. The district court interpreted a failure to respond affirmatively to this question as a binding decision not to seek reemployment "because a prerequisite to eligibility is the timely filing of a reemployment application." Appellants' Brief, Short Appendix at 8 (Order of April 21, 1983) (emphasis in original).
 
 
 22
 Appellants argue that the Settlement Agreement in fact only required all stewardesses who opted for reemployment to complete the claim form. Virtually all class members did complete the claim form, regardless of their indicated decision as to whether to seek reemployment, because the claim form was also the means by which those who did not wish re-employment could obtain alternative benefits from TWA. Appellants, in turn, rely on another provision in the Settlement Agreement which states:
 
 
 23
 TWA will have no obligation to retrain or re-employ any class member following the end of such one (1) year period [after the Final Order Date] if such class member has either not qualified for such retraining or re-employment, has elected not to participate in such retraining or has elected not to accept such reemployment during such one (1) year period.
 
 
 24
 Appellants' Appendix at 8.
 
 
 25
 The construction of a consent decree should be treated like that of a contract, and the purpose of the court in construing such a decree should be to discern the intent of the parties in entering into such an agreement. Sportmart, Inc. v. Wolverine World Wide, Inc., 601 F.2d 313, 316-17 (7th Cir.1979). See also United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971); White v. Roughton, 689 F.2d 118, 119-20 (7th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). In order to accomplish this, the construing court may look not only to the decree itself but to the circumstances surrounding the negotiation and formation of the Settlement Agreement. United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975).
 
 
 26
 Appellants' reliance on the passage of the Settlement Agreement quoted above appears misplaced because the passage seems intended to impose an additional requirement on a returning employee to accept re-employment within a year after the final order date. Such re-employment would only come after the prospective returnee has satisfactorily completed TWA's retraining course. It would not make sense within the framework of the agreement for an employee wishing to return to wait until the end (or almost the end) of that period to signify her desire to return because TWA's obligation to offer retraining courses expires at the end of that year. In addition, this passage taken as a whole imposes a series of additional prerequisites including willingness to undertake retraining and successful completion of the retraining course, all of which must logically come after the employee had indicated her desire to return to work.
 
 
 27
 The Settlement Agreement, however, does not state explicitly anywhere that there is a time limit on or before which a class member must indicate her desire to be re-employed, although completion of the claim form by December 2, 1979, was a clear prerequisite. Nonetheless, by examining the terms of the agreement more fully we conclude that the agreement, by repeatedly referring to the claim form as a "re-employment application," did contemplate that all class members desiring reinstatement would be required to complete the form in a manner reflecting that desire. To contend that a class member must complete the form in order to obtain her rights but to say then that the manner in which the form is completed is irrelevant or waivable would seem to undermine the framework for obtaining remedies established in the agreement.
 
 
 28
 Finally, we also note that the number of employees seeking reinstatement as determined from these 1979 claim forms was relied on by both the district court and this court in determining that the award of back seniority would not have an unusual adverse impact on the incumbent flight attendants. Airline Steward and Stewardesses Association, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1169 (7th Cir.1980). Appellants now assert that the number of employees who now wish to change their minds in order to return is smaller than the number who now no longer desire re-employment but had indicated in 1979 that they would seek re-employment. There is therefore a net "loss" of returnees, although appellees contend that this conclusion is incorrect because additional class members have been identified since 1979, thereby increasing the number of returnees. In any event, the significance of these representations by the plaintiff-class attorneys to the district court and to this court lies in these courts' reliance on the figures derived from the claim forms. The only seemingly logical construction to be given to the courts' and to the parties' own interpretation of the Settlement Agreement is that the claim forms were intended to double as re-employment applications. Further, the filing of such a form clearly indicating a decision against reinstatement would be binding on those class members who chose that option.
 
 
 29
 Appellants argue, in the alternative, that even if the agreement did require class members to indicate their intention to seek reinstatement by December 2, 1979, these provisions should now be modified because of changed circumstances. For the reasons previously stated in Part II, we must also reject this contention. The order of the district court is therefore affirmed.
 
 
 
 [1]
 For a full discussion of the procedural background of this case, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)
 
 
 [2]
 The statute required that an employee file a discrimination claim with the EEOC within 90 days of the alleged unlawful employment practice. 42 U.S.C. Sec. 2000e-5(d) (1970). The time limit was extended to 180 days in 1972. 42 U.S.C. Sec. 2000e-5(e) (Supp. II 1972)
 
 
 [3]
 Those stewardesses (approximately 30 women) who were terminated on or after March 2, 1970, and those who had previously accepted ground duty positions and so were in a continuing employment relationship with TWA were not considered barred. Approximately 400 other women fell into the class whose claims were considered barred. The first group, whose claims were not barred, was later designated by the district court as Subclass A and the second group as Subclass B
 
 
 [4]
 The "compensation period" was defined as "the period of time which commenced upon the termination of a class member's employment and ends on the date on which the Settlement Agreement is signed by TWA...." Appellants' Appendix at 2. TWA signed the agreement on June 18, 1979
 
 
 [5]
 At the time the district court permitted TWA to amend its answer to assert that the members of Subclass B were barred by failure to file charges timely with the EEOC, the court noted that TWA might have waived its defense of statutory time limitation by its delay in pleading the defense. Thus, while the Supreme Court's holding in Zipes does not entirely settle the issue of the validity of the claims of Subclass B members, the district court's observation concerning TWA's possible waiver of this defense indicates that perhaps none of the claims of any class members was barred
 
 
 [6]
 The district court noted that TWA's standing to object to seniority issues was "somewhat unclear" under the terms of the Settlement Agreement. The court did not decide this issue, however, because the arguments raised by TWA and by IFFA are substantially the same. Appellants' Brief, Short Appendix at 11 n. 3
 
 
 [7]
 Competitive seniority is of great significance to flight attendants because it determines the hierarchy among employees for purposes of domicile choice, bidding for flight assignments, schedule (or line) holder status and protection against furlough and displacement. For a fuller discussion, see Romasanta v. United Air Lines, Inc., 717 F.2d 1140, 1144-45 (7th Cir.1983)
 
 
 [8]
 Appellees TWA and IFFA argue that the Settlement Agreement is merely a contract governed by principles of local law generally applicable to contracts. Air Line Stewards and Stewardesses Association, Local 550, TWU, AFL-CIO v. Trans World Airlines, Inc., 713 F.2d 319, 321 (7th Cir.1983). The equitable remedies of reformation and rescission are usually available only when mistake, misrepresentation, duress and undue influence are present, but these remedies may also be available in cases of extreme and unforeseeable change of circumstances. RESTATEMENT (SECOND) OF CONTRACTS, chs. 6, 7 and 11, Secs. 151-77 and 261-72 (1981). We do not need to make a definitive determination whether the order enforcing the Settlement Agreement should be characterized as a contract or as a judicial decree because, in the absence of mistake, misrepresentation, duress and undue influence (which appellants do not allege), the standards for modification are essentially the same in both circumstances
 
 
 [9]
 Appellants also cite United States v. United Shoe Machinery Corp., 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968), for the proposition that, if the original decree does not prove adequate to remedy the harm as intended, then the district court has the power to modify the decree subsequently in order to accomplish its purpose. Id. at 248-52, 88 S.Ct. at 1499-1501. We, of course, do not disagree with the assertion that the district court has such authority. However, we do not agree that the district court has committed error by declining to exercise its authority in this case. The grant of additional back seniority to the appellants will primarily harm the incumbent employees. TWA is thus primarily a neutral bystander at this point in the litigation. It is therefore unclear how the award of additional seniority, under these particular circumstances, is necessary to further the goal of righting the wrong for which TWA was presumably responsible. In addition, the disadvantage to the appellants is not sufficiently egregious to require modification of the decree