EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,

and

Delores Agee, Madeline Aiello, Edna Braten, Laura Bury, Neva Buttell, Helen Claver, Charolette Dickerson, Leslie Drummer, Gladys Dwyer, Mary Ebell, Margaret Evans, Pearl Fice, Nora Flynn, Rose Genusa, Annie Gibbons, Freda Goldsmith, Agnes Hall, Rose Harvey, Virgil Hayes, Doris Hornung, Harriet Hutton, Clara Jenkens, Mary Kaufmann, Mary Lafferty, Clara Maricle, Eleanor Marinich, Amelia Monroe, Emma Lou Moore, Ruth Osborn, Ann Pitcher, Julia Ross, Lavon Schuster, Margaret Thompson, Millie Wageman, Josephine Walker, Ann Williams, Grace Wort, Jessie Wright, and Geneva Wytcherly, Intervenors-Appellants,

v.

HIRAM WALKER & SONS, INC., and Distillery Workers of America, Local 55, Defendants-Appellees.

No. 84–1588.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1985.

Decided July 24, 1985.

Rehearing Denied Oct. 8, 1985.

Kevin W. Lyons, Peoria, Ill., for defendants-appellees.

Peggy R. Mastroianni, E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Appellants, thirty-nine former employees of Hiram Walker & Sons, Inc. (Walker or the company), appeal from a consent decree entered in settlement of a sex discrimination in employment suit brought by the Equal Employment Opportunity Commission (EEOC) against the company. The district court permitted appellants to intervene for purposes of appeal. The issue on appeal is whether the district court abused its discretion when it approved the decree, which grants limited relief to the class of employees as a whole and virtually no relief to those employees, many of them charging parties, who allegedly endured the most discrimination.

## I. THE FACTS

Two sets of charges gave rise to the present litigation. In 1975, 123 female employees filed charges against Walker, the National Organization of Women filed a charge on behalf of certain current and retired female employees, and the employees' union, Local 55 of the Distillery Workers of America, filed similar charges. All 1975 charges related to alleged discrimination in the provision of pension benefits and sought, as remedies, the recalculation of those benefits. In 1977, 113 female employees filed charges against both Walker and Local 55 alleging discrimination in job assignment and exclusion, transfer and promotions, layoffs, and provision of certain benefits. The 1977 charges requested back pay relief in addition to other remedies.

An EEOC investigation found reasonable cause to believe that all the allegations were true and, after conciliation attempts failed, the EEOC brought suit against both the company and the union under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e (1976). The complaint alleged that defendants engaged in a variety of unlawful employment practices that discriminated against women employees because of their sex. Defendants denied all allegations and asserted numerous affirmative defenses to the charges. Settlement negotiations occurred over a period of several years and, by the time the parties agreed to the consent decree in 1983, they had completed practically all relevant discovery. The district court granted preliminary approval of the proposed consent decree and directed that the parties send notice to the affected individuals. At the subsequent fairness hearing in late 1983, the court heard arguments against approval from numerous objectors, some appearing pro se and some represented by counsel, and arguments in support of the decree from both the EEOC and Walker. In a comprehensive, thirty-six page memorandum opinion and order, the district court approved the final consent decree. The court then allowed those employees who had objected to the decree to intervene for purposes of appeal.

The EEOC and Walker present dramatically different interpretations of the facts underlying the allegedly discriminatory practices. The undisputed facts are that Walker divided its Peoria, Illinois, plant, since closed by Walker in 1981, into ten divisions, with a total work crew of between 479 and 889 employees. In the 1981 shutdown agreement between the company and Local 55, each employee who, because of a layoff, had received less than a full year's pension credit for any year between 1973 and 1981 had pension benefits redetermined as if the employee had worked the entire year.

According to the EEOC, prior to 1965, Walker classified all jobs as either "men's jobs" or "women's jobs." Then, after passage of Title VII, the new collective bargaining agreement split one of the plant divisions in two, thus creating a new division that encompassed all those jobs formerly designated as women's jobs, the lowest paying positions in the plant. The women employees, largely confined to production aspects of the plant's activities, were most directly affected by fluctuations in output, rendering them highly susceptible to layoff. When layoffs occurred, an employee had the option of taking an "involuntary transfer" to another position, but

both the company and the union encouraged women employees to sign a written "decline of transfer" form, revocable only in writing. The company generally considered women to be incapable of performing men's jobs, and, if a woman chose to take an involuntary transfer, the company invariably assigned her to a physically difficult job, thereby discouraging further transfers. The frequent layoffs had a substantial detrimental effect upon the pension benefits earned by female employees, because benefits were based upon both years of service and salary. Not until 1973 did Walker make initial assignments of women to jobs other than the traditionally women's jobs; in 1975, the company ceased using the written decline of transfer forms; and, by 1977, the company had hired a significant number of women into traditional men's jobs.

During the course of discovery and settlement negotiations, it became apparent that the EEOC and Walker had fundamental disagreements about numerous legal issues. One disputed issue was whether the 1975 pension-related charges or the more expansive 1977 charges triggered the right to back pay. The importance of that issue rests in the fact that Title VII imposes a two-year statute of limitations upon the recovery of back pay. 42 U.S.C. § 2000e–5(g). A closely related issue was whether the pension relief sought pursuant to the 1975 charges was in the nature of back pay relief, as the company contended, or, as the EEOC maintained, injunctive relief, for which there is no statute of limitations. Thirdly, Walker claimed that only its initial assignments of women employees were subject to judicial review. Because Illinois has an applicable statute, any claimant had to file an EEOC charge within 300 days of the alleged discrimination, and Walker's interpretation would thus greatly limit the number of women who could receive monetary relief. 42 U.S.C. § 2000e–5(e). The EEOC, on the other hand, maintained that Walker had engaged in a continuing violation of Title VII, consequently tolling the 300-day limit. Finally, the company also argued that the EEOC could not establish

that pension relief was available for any period before 1973, the EEOC having conceded that the shutdown agreement granted all pension benefits potentially obtainable through litigation·from 1973 until the plant closed. The company maintained that the individual employees caused all adverse effects upon their pension benefits by declining to exercise their right to an involuntary transfer, as opposed to layoff.

The proposed consent decree, approved by the district court over the objections of appellants, provided two basic types of relief. The settlement limited pension relief to those women hired prior to 1965 who had demonstrated some willingness to take a men's job after 1965. Apparently, the time limit was a result of the elimination of explicit male and female job classifications beginning with the 1965 collective bargaining agreement, and the requirement of a demonstrable willingness to take a men's job limited relief to those who clearly suffered as a result of the alleged discrimination. Using these criteria, eight women hired before 1960 received two additional years of credited service for purposes of determining their pension benefits, and eight women hired between 1960 and 1965 received one additional year of service.

The monetary relief, called "Initial Assignment Relief" by the parties, awarded $151,200, divided in amounts ranging from $900 to $5,850, to fifty-eight women hired before 1977 and $14,400, in amounts ranging from $225 to $900, to twenty-four women hired in 1977 or 1978. Only women who, beginning in 1973—the earliest possible cut-off date if the two-year statute of limitations for back pay applied—took involuntary transfers instead of layoffs were eligible for initial assignment relief. Finally, all charging parties who received no specific relief under the decree would share in any awarded sums that were not disbursed because of the death of or inability to locate the designated recipient.

The objections to the proposed decree took a wide variety of forms, although there were three principal objections. The most prevalent objection below, and the

one most strenuously urged on appeal, was that those women who suffered the most effects from Walker's discrimination for the longest period received little or no relief. Indeed, of the 123 women who filed 1975 charges with respect to pension benefits, only sixteen received relief, and none of the longest-employed women received initial assignment relief. A second objection, related to pension benefits, compared the level of the objectors' newly adjusted benefits to the benefits received by men hired contemporaneously with the objectors. The parties do not dispute that the achievement of a thirtieth year of credited service resulted in a huge jump in the level of pension benefits received—from approximately $160 per month and no medical benefits to $700 per month and full medical coverage—and that the pension relief afforded by the decree placed none of the recipients over the thirty-year threshold. As a result, the pension relief amounted to less than twenty dollars per month for each of the sixteen recipients. Finally, the objectors claimed that the decree failed to address the discriminatory effects resulting from the company's discouraging them from taking transfers. In other words, because the company historically had actively discouraged involuntary transfers and continued to do so until the plant closed, many female employees could never fulfill the willingness criterion for initial assignment relief.

The district court, applying the test set out in *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006 (7th Cir.1980), determined that the proposed decree was "fair, adequate, reasonable and appropriate under the particular facts," *id.* at 1014, and, consequently, approved the decree. The court noted that, if it denied approval, the case might continue for years and any trial could take at least four months. The court went on to note the bitterness felt by Walker's long-term employees and acknowledged that they might be correct in believing the settlement to be inadequate. Indeed, in allowing most of those employ-

ees to intervene for purposes of this appeal, the court stated:

> Ironically, most of those women who were charging parties and endured (from their point of view) discriminatory effects for many years end up with no relief under the decree. On the other hand, women who started working at Hiram Walker in the 1970's and were subject to discrimination, if at all, for a far fewer number of years, obtain proportionately greater relief under the decree.

Nonetheless, the court noted:

> If any one or more of the hotly contested issues were decided in favor of Hiram Walker, the end result could be no relief at all, or at least less relief than is contained in the Consent Decree. The Court is not convinced that the legal issues involved are well settled in favor of the EEOC position. I perceive that there is an inherent risk to all parties if this case were to go to trial.

In light of the risks of litigation, the court determined that the relief provided by the decree was fair and reasonable.

On appeal, the intervenors reassert all the same grounds that they raised below as objectors to attempt to show that the decree is not fair and reasonable, specifically because most of those who suffered from discrimination for the longest period of time received little or no relief.

## II. THE DECISION

■ The standard of review applicable to our review of the district court's approval of the consent decree is a narrow one, largely because of the nature of the district court's function when considering approval. The same standards generally apply to district and appellate court review of Title VII settlements as apply to any class action settlement. *Airline Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc.*, 573 F.2d 960, 963 (7th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190. Underlying these standards is the general policy favoring voluntary settlements of class ac-

tion disputes, *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d at 1013; *accord Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984); *Adams Extract Co. v. Pleasure Hours, Inc. (In re Corrugated Container Antitrust Litigation),* 643 F.2d 195, 207 (5th Cir.1981), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), a policy even more forcefully applicable in Title VII cases because of Congress' express preference for settlement in such cases, *Freedman v. Air Line Stewards & Stewardesses Association, Local 550,* 730 F.2d 509, 515 (7th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 275, 83 L.Ed.2d 211; *Air Lines Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc.,* 455 F.2d 101, 109 (7th Cir.1972); *accord Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir.1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65; *Moore v. City of San Jose,* 615 F.2d 1265, 1271 (9th Cir.1980); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1183 (5th Cir. 1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

▪ As we have recognized repeatedly, a district court must determine whether a proposed decree is lawful, fair, reasonable, and adequate. *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir.1982); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d at 1024. *Accord Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117, 1129 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). Among the factors that a district court should consider when it makes this "fairness" determination are: a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer; the likely complexity, length, and expense of the litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and, the stage of the proceedings and the amount of discovery already undertaken at the time of the settlement. *Gautreaux v. Pierce,* 690 F.2d at 631, *citing Armstrong v. Board of School Directors,*

616 F.2d 305, 314 (7th Cir.1980). The first-listed factor is the most important. *Armstrong v. Board of School Directors,* 616 F.2d at 314. *Accord Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir.1983); *Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir.1983); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1172 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). The district court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate.

▪ The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights. *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir.1979); *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.),* 494 F.2d 799, 801 (3d Cir.1974), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146. The essence of settlement is compromise. *Gautreaux v. Pierce,* 690 F.2d at 637. *Accord Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 624 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971); *McDonald v. Chicago Milwaukee Corp.,* 565 F.2d 416, 429 (7th Cir.1977); *United States v. City of Jackson, Mississippi,* 519 F.2d 1147, 1152 (5th Cir.1975). Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial. *Freedman v. Air Line Stewards & Stewardesses Association, Local 550,* 730 F.2d at 514–15 ("The chances of the outcome of litigation ... represented precisely the calculated risks which both parties took in deciding to terminate the suit through settlement."); *Air Lines Stewards & Stewardesses Associa-*

*tion, Local 550 v. American Airlines, Inc.,* 455 F.2d at 109 ("This is precisely the sort of gratuitous opinion that the parties are entitled not to have foisted upon them under the scheme of Title VII."). That each side gains something is, of course, true of all settlements between rational parties and is not alone sufficient to approve the settlement.

■ While a district court should be chary of disapproving a consent decree, an appellate court's review of a decree is even more limited. *Armstrong v. Board of School Directors,* 616 F.2d at 315; *Dawson v. Pastrick,* 600 F.2d at 75. The equitable and subjective nature of the district court's inquiry has led the appellate courts to apply an abuse of discretion standard of review to a district court's determination that a consent decree is fair. *Dawson v. Pastrick,* 600 F.2d at 75; *Airline Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc.,* 573 F.2d at 962; *Patterson v. Stovall,* 528 F.2d 108, 112 (7th Cir.1976). *Accord Flinn v. FMC Corp.,* 528 F.2d at 1172; *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.),* 494 F.2d at 801. *Cf. Donovan v. Robbins,* 752 F.2d 1170, 1177 (7th Cir.1985) (reversing district court's *refusal* to approve consent decree and suggesting, although ultimately rejecting, that a less deferential standard of review might apply to such cases); *United States v. City of Alexandria,* 614 F.2d 1358, 1362 (5th Cir.1980) (applying *de novo* review to appeal from district court's refusal to approve decree). Yet, the fact that the district court's exercise of discretion is equitable in nature does not insulate the settlement from review. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). Our review must focus upon the district court's application of the principles governing approval of consent decrees and not upon the substantive legal issues. *Armstrong v. Board of School Directors,* 616 F.2d at 315.

■ Applying this abuse of discretion standard to the present case, we note that the district court gave careful consideration to the claims raised below by appellants and denied them relief only after a comprehensive, thirty-six page opinion. The court specifically addressed all the appropriate factors delineated in *Gautreaux.* The court properly focused its analysis on a comparison of the settlement benefits—acknowledged to be not overly generous, especially with respect to those women employed the longest—with the likely outcome of litigation. The court noted the great uncertainty about the proper resolution of a number of legal issues involved, any one of which, if resolved in favor of Walker, would result in no recovery for any of the affected women, even those who received benefits under the decree. While the number of objectors clearly concerned the district court, nevertheless, the court concluded that, on balance, the substantial risks of litigation and the time and expense that a long trial would require justified the settlement. We conclude that the district court did not abuse its discretion by approving the consent decree in this case.

■ Except for the number of objectors, none of the factors that have caused appellate courts to view certain consent decrees with scepticism is present in this case. Those suspicious factors include the allocation of most or all of the settlement benefits to the named plaintiffs or, in cases like this, the charging parties, *see Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir.1983); *United States v. Texas Education Agency,* 679 F.2d 1104, 1107 (5th Cir.1982) (per curiam); *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir.1982), the filing of a proposed decree early in the history of a case, before significant discovery has occurred, *see Oswald v. General Motors Corp. (In re General Motors Corp. Engine Interchange Litigation),* 594 F.2d 1106, 1128 (7th Cir.1979), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95; *accord Malchman v. Davis,* 706 F.2d 426, 434 (2d Cir.1983); *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 463 (2d Cir.1982); *Plummer v. Chemical Bank,* 668 F.2d 654, or, an allegation that the attorneys involved have sac-

rificed their clients' interests to assure themselves of receiving sizable attorneys' fees, *Oswald v. General Motors Corp. (In re General Motors Corp. Engine Interchange Litigation)*, 594 F.2d at 1130; *Patterson v. Stovall*, 528 F.2d 108 at 113 (7th Cir.1976); *accord Ficalora v. Lockheed California Co.*, 751 F.2d 995, 996–97 (9th Cir.1985). In the present case, most of the settlement funds went to employees other than the principal charging parties, *see Parker v. Anderson*, 667 F.2d 1204 (5th Cir.1982), the settlement occurred only after extensive discovery, *see Flinn v. FMC Corp.*, 528 F.2d at 1172 (settlement at late stage of discovery assures sufficient development of record to permit reasonable assessment of merits), and, each party agreed to bear its own costs. Nor is there any suggestion in the record, aside from some objectors' totally unsubstantiated assertions, that the parties entered the decree merely to rid themselves of lengthy litigation. *See Armstrong v. Board of School Directors*, 616 F.2d at 327. Consequently, aside from the number of objectors, nothing in the record suggests that heightened appellate review would be appropriate in this case. *See United States v. City of Alexandria*, 614 F.2d at 1361 (suggesting that level of scrutiny varies with factors such as the trial court's familiarity with the issues, the stage of discovery, and the types of issues involved).

As we have previously stated, in a class action case brought under 42 U.S.C. § 1983:

> The district court analyzed the relief offered in the settlement at length and found that, when balanced against the uncertain status of the law as to plaintiffs' claims and the probable complexity of any further litigation, it provided relief which was fair, reasonable and adequate.... The district court's analysis indicated to it that the settlement provides the plaintiff class with substantial relief from the [illegal] acts of the defendants while securing for the litigants the benefits of a prompt resolution of the suit without further litigation. We cannot say that the district court abused its

discretion in finding that the balance of these factors favored settlement.

*Armstrong v. Board of School Directors*, 616 F.2d at 323. *Accord Officers for Justice v. Civil Service Commission*, 688 F.2d at 625. We reach a similar conclusion here, for much the same reasons. There is no showing that the amounts received by the beneficiaries of the settlement were totally inadequate. *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 864 (5th Cir.1975) (settlement upheld; no "compelling showing" that average of $500 award was "nothing but a mere pittance"), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 494 F.2d at 802 (given likelihood that plaintiffs would receive nothing if case went to trial, no abuse of discretion in approval of settlement for small percentage of plaintiffs' asserted loss). *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir.1974) (dictum) (antitrust case). Similarly, none of the women excluded from relief by the decree has established that she should have been included. As we have noted, there was a substantial risk that no employees would have received any relief had the case gone to trial. Thus, the fact that a substantial number of the affected women received significant relief, when considered in light of the expense and great risks of further litigation, leads us to conclude that the district court did not abuse its discretion.

■ The fact that a large number of women objected does not alter our conclusion. Thirty-nine women—out of 253 affected by the settlement—appealed from the district court's judgment approving the decree. Thus, the objectors number less than fifteen percent of the affected women. The only case of which we are aware in which the number of objectors was the key factor in reversing approval of a decree is *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). In that case, approximately seventy percent of the relevant subclass objected

to a back pay settlement. The court acknowledged that district courts could approve a decree despite a large number of objectors, *id.* at 1215, 1217, but, under the circumstances, concluded that the number of objectors indicated that there was something unfair about the decree, *id.* at 1216, 1218. In opposition to *Pettway* stand *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir.1983), and *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982), in which forty percent and fifty-five percent, respectively, of the affected claimants objected, but the courts still affirmed the district courts' approval of the decrees. These cases established that, without more, a large number of objectors will not result in the reversal of a district court's approval of a consent decree. As we have demonstrated above, no other factor is present in this case to suggest that the settlement is suspect, either in amount or in the procedural manner in which the parties reached, and the district court approved of, the settlement.

Although appellants' counsel at oral argument claimed, in passing, that the decree intentionally discriminated against those who brought charges against Walker, appellants failed to include this allegation of vindictiveness in either the initial or the reply brief. Furthermore, there is nothing in the record to substantiate counsel's assertion. Also, appellants evidently did not raise the vindictiveness claim below. Consequently, this case is clearly distinguishable from *Ficalora v. Lockheed California Co.*, 751 F.2d 995 (9th Cir.1985), where the appellant alleged vindictiveness in the district court, but the district judge made no inquiry into the allegation. In the present case, because appellants never raised, in the district court, the issue of retaliatory exclusion from the consent decree's benefits, they cannot raise it for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1220 (7th Cir.1984).

█ Finally, appellants seek a favorable ruling from this court by appealing to the acknowledged remedial goal of Title VII to make whole the victims of sex discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. at 418, 95 S.Ct. at 2372; *Freedman v. Air Line Stewards & Stewardesses Association, Local 550,* 730 F.2d at 513. The problem with appellants' argument is that the principle that they cite applies only after there has been a judicial determination or a concession of liability. There can be no court-imposed remedy without a finding of liability. In the present case, there has been no such finding. The parties reached a settlement without a concession of liability by defendants and with the substantial possibility that trial would entirely absolve defendants. As one court has stated in a similar situation, the duty of a district court to make whole a victim of discrimination "arises only after a judicial determination of discrimination. A court asked to approve a compensation procedure established pursuant to a consent decree in which discrimination is neither admitted nor proven is in a fundamentally different position." *United States v. Trucking Employers, Inc.,* 561 F.2d 313, 317 n. 13 (D.C. Cir.1977).

## III. CONCLUSION

We have considered all the arguments of appellants and find them to be without merit. Having concluded that the district court did not abuse its discretion in approving the consent decree, we AFFIRM the judgment.